[Cite as *State v. Harris*, 2024-Ohio-2707.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                               No. 113128

v.                                :

DASHON HARRIS,                    :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 18, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674806-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Dominic Neville, Assistant Prosecuting Attorney, *for appellee*.

Fred D. Middleton, *for appellant*.

MICHAEL JOHN RYAN, J.:

**{¶ 1}** Defendant-appellant Dashon Harris appeals his conviction and sentence, which were rendered after a jury trial. For the reasons that follow, we affirm.

**{¶ 2}** In 2022, Harris was indicted in a multicount indictment along with codefendant Julia Flanik. Harris was charged with aggravated robbery with one- and three-year firearm specifications (Count 1); felonious assault with one- and three-year firearm specifications (Count 2); abduction with one- and three-year firearm specifications (Count 3); and endangering children (Count 4). Counts 1 – 3 also contained forfeiture specifications. The case proceeded to a joint jury trial.

**{¶ 3}** The following facts are taken from Flanik's appeal. *State v. Flanik*, 2024-Ohio-1689, ¶ 2 – 7 (8th Dist.).

**{¶ 4}** The victim testified that Flanik, who is her daughter, and Harris have a child together. For a period, they resided with the victim. Eventually, they moved to their own apartment. Flanik worked, but Harris did not. At times, the victim willingly provided Flanik and Harris with money.

**{¶ 5}** On September 25, 2022, Flanik sent a text to the victim inquiring about when the victim was getting paid. After a brief exchange of texts, the victim stated, "See you Thursday" and planned for Harris to come and pick up money from her then. On Thursday, September 29, 2022, Harris arrived at the victim's home. The victim had already withdrawn money and was not planning to visit the ATM that day. The victim testified that she gave Harris "a couple hundred dollars and 40

[dollars]," but it was not enough for him. Harris demanded more money, broke the victim's television, struck the victim in the face, threatened the victim, and put a gun to the victim's mouth. The victim testified she did not have any more money to give them and needed to save her money for rent and her bills.

{¶ 6} Flanik waited outside in the car with the couple's child. Harris made the victim go with him to the bank; they were driven there by Flanik. The victim testified she was afraid of Harris and she did not want anything to happen to her daughter. When they arrived at the bank, Flanik used the victim's bank card to withdraw money from the ATM. Flanik then drove the victim home, and the victim was dropped off in the street.

{¶ 7} The victim went to work where the injuries to her face were noticed by others. The police were called, and the victim told the police what happened. An officer testified that the victim was extremely upset. The victim also went to the bank later that day to set up a new account because her account had been compromised by Harris and her daughter.

{¶ 8} Harris waived his Miranda rights and voluntarily gave a statement to the police. As to the robbery, Harris admitted to police that he hit the victim with his left hand and "whooped her a**, broke some sh** in the apartment."

{¶ 9} Other testimony and evidence were provided in the matter, which this court has reviewed.

{¶ 10} The trial court granted Harris's Crim.R. 29 motion for acquittal as to Count 4 for endangering children. Harris was convicted of Counts 1, 2, and 3, along

with the accompanying firearm specifications and forfeiture of a weapon specification.

{¶ 11} The trial court found Counts 1 and 3 to be allied offenses of similar import, and the State elected to proceed with sentencing on Count 1. The trial court sentenced Harris to three years on each of the three-year firearm specifications for Counts 1 and 3, for a total of six years, to be served prior to and consecutive to an indefinite prison term of ten- to 15-years on the base charge on Count 1.

{¶ 12} Harris timely filed this appeal and raises five assignments of error for review.

> I. The trial court erred in entering judgment of conviction of aggravated robbery with a firearm specification and aggravated assault with a firearm specification which was based upon insufficient evidence, in violation of Defendant's right to Due Process of Law, as protected by the 14th Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution.
>
> II. The trial court erred in entering judgment of conviction of aggravated robbery with a firearm specification and aggravated assault with a firearm specification which was against the manifest weight of the evidence, in violation of Defendant's right to Due Process of Law, as protected by the 14th Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution.
>
> III. The convictions were based upon illegally obtained statements which were not properly recorded or presented to the jury in violation of Defendant's right to Due Process of Law, as protected by the 14th Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution.
>
> IV. The trial court erred in allowing introduction of "Other Acts" testimony which were over the objection of defendant, in violation of Defendant's right to Due Process of Law, as protected by the 14th Amendment to the United States Constitution, and Article I, Section 14 of the Ohio.

V. The defense attorney failed to effectively represent the defendant by failing to move for suppression of the statement produced during interrogation, the "other acts" testimony and called no witnesses for the defense.

{¶ 13} In the first assignment of error, Harris claims there is insufficient evidence to support his convictions. When determining whether a verdict is supported by sufficient evidence, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Wilks*, 2018-Ohio-1562, ¶ 156, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. When evaluating the sufficiency of the evidence, a reviewing court considers "whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at *id.*

{¶ 14} Harris challenges his aggravated robbery and "aggravated assault" convictions. Harris was not charged with or convicted of aggravated assault. He was charged with and convicted of felonious assault, pursuant to R.C. 2903.11(A)(2), and we find that there was sufficient evidence to support that conviction.

{¶ 15} Harris was also convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides in pertinent part that "[n]o person, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense, shall . . . [h]ave a deadly weapon on or about the offender's person or under

the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶ 16} Harris argues that there was insufficient evidence to show that he committed aggravated robbery because the victim admitted that she planned to give Harris and her daughter money that day. Specifically, Harris claims he was only a bystander and points to the evidence that Flanik is the one who withdrew the victim's money from the ATM. We disagree and find ample evidence in the record that implicates Harris in the commission of aggravated robbery. The testimony and evidence show that Harris and Flanik worked in concert to commit aggravated robbery against Flanik's mother. Although the victim was willing to give Harris and Flanik money that day, it was not enough, so Harris assaulted the victim and pointed a gun at her. Flanik then drove Harris and her mother to the ATM where Flanik used the victim's ATM card to withdraw more money. The victim testified that while in the car, she was scared and stated, "Please, I don't want to do this. I can't do this. I can't afford this."

{¶ 17} After viewing this and the other testimony and evidence presented in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt that Harris committed aggravated robbery and felonious assault. The first assignment of error is overruled.

{¶ 18} In the second assignment of error, Harris argues that his aggravated robbery and "aggravated assault" convictions were against the manifest weight of

the evidence. Again, Harris was convicted of felonious assault, not aggravated assault, and we find that conviction is not against the manifest weight of the evidence.

{¶ 19} When evaluating a claim that a verdict is against the manifest weight of the evidence, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *Wilks*, 2018-Ohio-1562, at ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 20} Harris argues that the victim's testimony is not to be believed and there was no evidence he had a gun. We find nothing incredible about her testimony that Harris had a firearm and pointed it at her.

{¶ 21} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we do not find the trial court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. Although Harris challenges the testimony and evidence that was provided, this is not the exceptional case in which

the evidence weighs heavily against the conviction. We are not persuaded by Harris's arguments otherwise. The second assignment of error is overruled.

{¶ 22} Harris's third assignment of error states that his convictions were based upon illegally obtained statements in violation of his due process of law.

{¶ 23} First, although Harris states that his statement was illegally obtained, he fails to support the assertion, other than to state that he was interrogated without an attorney present and the recording of the interrogation was defective. Although Harris might not have had an attorney present during questioning, he waived his *Miranda* rights, including the right to have an attorney present, and voluntarily gave a statement to the police.

{¶ 24} Harris also argues that he was not given the full opportunity to cross-examine the detective. Although Harris's argument is difficult to decipher, it appears that he is complaining that the State objected to a question defense counsel posed to the detective regarding the detective's report of the incident. The record reflects that although the State initially objected, it subsequently withdrew its objection and Harris's attorney proceeded with cross-examination. Therefore, we find no error and the third assignment of error is overruled.

{¶ 25} In the fourth assignment of error, Harris argues that the trial court erred in allowing into evidence other acts testimony contra to the rules on hearsay statements.

{¶ 26} "'A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is

admissible hearsay.'" *Flanik*, 2024-Ohio-1689, at ¶ 27, citing *State v. Shepard*, 2023-Ohio-4791, ¶ 74 (8th Dist.). A reviewing court will not reverse a trial court's ruling on evidentiary issues "absent an abuse of discretion and proof of material prejudice." *Flanik* at *id.*, citing *State v. McKelton*, 2016-Ohio-5735, ¶ 181.

{¶ 27} Evid.R. 404(B) prohibits evidence of any other crime, wrong, or act to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. The rule does provide that the evidence may be "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

{¶ 28} Harris claims that the court erred when it allowed the following testimony from a bank employee: "She told me that her account was compromised when her daughter and her daughter's boyfriend came to her apartment earlier that morning. They beat her up. They — she told me that they pistol-whipped her and took her to the ATM to take money out of her account." Harris also challenges statements made by the victim regarding past occurrences where Harris took money from her.

{¶ 29} In *State v. Tench*, 2018-Ohio-5205, and *State v. Williams*, 2012-Ohio-5695, the Ohio Supreme Court set forth a three-step analysis for a trial court to conduct in determining the admissibility of other-acts evidence:

> The court must consider (1) whether the other-acts evidence is relevant under Evid.R. 401, i.e., whether it tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence, (2) whether the evidence is presented to prove a person's character to show conduct in

conformity therewith, or whether it is presented for a legitimate other purpose, and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, Evid.R. 403. However, "the rule affords broad discretion to the trial judge regarding the admission of other acts evidence."

*Tench* at ¶ 139, citing *Williams* at ¶ 17, 20.

{¶ 30} The Court also stated in *Tench*, "'Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction.'" *Id.* at ¶ 177, quoting *State v. Lytle*, 48 Ohio St.2d 391 (1976), paragraph three of the syllabus. "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 2014-Ohio-5052, ¶ 32.

{¶ 31} Although the challenged statements may have been hearsay, any error was harmless and there was ample evidence to support the convictions. We find that the error, if any, in admitting into evidence statements the bank teller and the victim made regarding appellant was harmless in the face of overwhelming evidence that Harris committed the crimes of which he was convicted.

{¶ 32} The fourth assignment of error is overruled.

{¶ 33} In the fifth assignment of error, Harris argues that he was denied effective assistance of counsel.

{¶ 34} To establish ineffective assistance of counsel, the defendant must show "(1) that defense counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and

(2) that counsel's deficient performance prejudiced him [or her], i.e., that there is a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *Flanik*, 2024-Ohio-1689, at ¶ 34 (8th Dist.), citing *State v. Nicholson*, 2024-Ohio-604, ¶ 318, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Flanik* at *id.*

{¶ 35} Harris argues that his counsel was ineffective for failing to file a motion to suppress his statements made while he was in custody, failing to file a motion in limine to exclude other acts evidence, and for failing to call witnesses on Harris's behalf.

{¶ 36} Counsel is not required to file what would amount to futile motions. There was no basis to file a motion to suppress because, as the detective testified on cross-examination, he fully advised Harris of his rights and Harris chose to talk to the police and give a statement. Counsel was also not required to file a motion in limine to exclude Evid.R. 404(B) evidence because, as discussed under the previous assignment of error, the other acts evidence was either admissible or its admissibility was harmless error.

{¶ 37} Finally, defense counsel's decision not to call witnesses on Harris's behalf does not amount to ineffective assistance of counsel. Harris has not identified any potential witnesses and how their testimony could have aided his defense. Therefore, he has failed to demonstrate that he was prejudiced.

{¶ 38} The fifth assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR